AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

| FILED _____ LODGED |
| _____ RECEIVED |
| FEB 05 2020 |
| CLERK U.S. DISTRICT COURT |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| DEPUTY |

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The following Google accounts:  Sean@rpmnorthwest.com and rpmpnw@gmail.com, hosted at premises controlled by Google LLC, located at 1600 Amphitheatre Parkway, Mountain View, California 94043, as further described in Attachment A.

)
)
)
)
)
)

Case No.  MJ20-5013

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Sean@rpmnorthwest.com and rpmpnw@gmail.com, hosted at premises further described in Attachment A and B.

located in the ____Northern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A and B for a list of information to be disclosed.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 42 U.S.C. §7413(c)(2) | Tampering with emissions-reducing components of truck exhaust systems and disabling of trucks' computer emissions-monitoring systems. |

The application is based on these facts:

✓  See Affidavit of Jennifer L. Jackson, continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

EPA Special Agent Jennifer L. Jackson
*Printed name and title*

⊙ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   02/05/2020

*Judge's signature*

City and state:  Tacoma, Washington

David W. Christel United States Magistrate Judge
*Printed name and title*

USAO: 2019R00741

## AFFIDAVIT OF SPECIAL AGENT JENNIFER JACKSON

STATE OF WASHINGTON          )
                             )      ss
COUNTY OF KING               )

I, Jennifer L. Jackson, a Special Agent with the Environmental Protection Agency, Criminal Investigation Division, in Portland, Oregon, having being duly sworn, state as follows:

## AFFIANT BACKGROUND

1.     I am a Special Agent employed by the United States Environmental Protection Agency, Criminal Investigation Division (EPA-CID). I have been so employed for approximately nine years. I have a master's degree in Environmental Management from the Nicholas School of the Environment and a Bachelor of Science degree in Environmental Science from Gettysburg College. I have completed training at the Federal Law Enforcement Training Center in Glynco, Georgia, which included the Criminal Investigator Training Program, the EPA-CID Environmental Investigation Basic Training Program, and the Economic Crimes Investigation and Analysis Training Program.

2.     As a federal agent, I am authorized to investigate criminal violations of federal environmental statutes, including but not limited to, the Clean Air Act (CAA), and violations under Title 18 of the United States Code. Pursuant to 18 U.S.C. § 3063, Special Agents of EPA-CID are authorized to apply for and serve search warrants. I have participated in the execution of numerous search warrants involving violations of federal environmental statutes.

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

3.     The EPA-CID is presently investigating an automotive repair shop named RPM Northwest for illegally manipulating emission systems on their customers' diesel trucks in order to enhance truck performance including horsepower, torque, and gas mileage. The manipulations involve replacing, removing or tampering with emissions-reducing

1   components of the trucks' exhaust system and disabling the trucks' computer emissions-
2   monitoring systems.  The investigation concerns violations of, inter alia, 42 U.S.C. §
3   7413(c)(2) (the Clean Air Act).

4        4.     On August 7, 2019, this Court issued an order authorizing the release of
5   subscriber information, pursuant to 18 U.S.C. § 2703(d), for the email account
6   Sean@rpmnorthwest.com and Tech@rpmnorthwest.com.  My review of the evidence
7   generated following that order revealed that Sean@rpmnorthwest.com is closely associated
8   with another email address, rpmpnw@gmail.com (together, the "Subject Accounts"), and
9   both email addresses are used in connection with the illegal manipulation of emissions
10  systems.  Both of the Subject Accounts are operated by Google.  My review did not reveal
11  recent activity for Tech@rpmnorthwest.com.  This Affidavit establishes probable cause to
12  support the issuance of a warrant to search the Subject Accounts for additional evidence of
13  violations of Title 42 United States Code, Section 7413(c)(2).

14       5.     The information to be searched is described in the following paragraphs and in
15  Attachment A.  This affidavit is made in support of an application for a search warrant issued
16  pursuant to 18 U.S.C §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Google to
17  disclose to the government copies of the information (including the content of
18  communications) further described in Section I of Attachment B.  Upon receipt of the
19  information described in Section I of attachment B, government-authorized persons will
20  review that information to locate the items described in Section II of Attachment B.

21       6.     The information set forth in this Affidavit is not intended to detail each and
22  every fact and circumstance of the investigation or all information known to me or the
23  investigative participants.  Rather, this Affidavit is intended to present the facts relevant to
24  the issue of whether probable cause exists to issue the requested search warrant.

25                            **JURISDICTION**

26       7.     This Court has jurisdiction to issue the requested warrant because it is "a court
27  of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A)

28

Affidavit of Special Agent Jennifer Jackson- 2
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

& (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

## APPLICABLE LAWS AND REGULATIONS

**A.      Statutory and Regulatory Background**

8.      The purpose of the Clean Air Act is, among other things, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1); see also 42 U.S.C. § 7470.  In enacting the CAA, Congress found that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare."  42 U.S.C. § 7401(a)(2).

9.      The CAA regulates "mobile sources," which include motor vehicle engines and off-road vehicles and engines.  Mobile sources must comply with the CAA emission standards.  Those standards apply to cars, trucks, buses, recreational vehicles and engines, generators, farm and construction machines, lawn and garden equipment, marine engines, and locomotives.

10.      Congress has instructed the EPA to establish regulations and standards to control emissions from motor vehicles which cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare.  42 U.S.C. § 7521(a)(1).

11.      Congress authorized the EPA to enforce mobile source emission standards and regulations to ensure that pollution levels are controlled and reduced.  42 U.S.C. § 7524.

12.      Pursuant to 42 U.S.C. §§ 7521–7554, and the regulations promulgated thereunder, the EPA has established standards limiting the emission of air pollutants from various classes of motor vehicle engines.

13.      Heavy-duty diesel engines (HDDEs) comprise one such class, which is subject to the regulations found at 40 C.F.R. Part 86, Subpart A.  Another class, light-duty vehicles and medium-duty vehicles, is subject to the regulations found at 40 C.F.R. Part 86, Subpart S. As required by the CAA, the emission standards must "reflect the greatest degree of emission reduction achievable through the application of [available] technology." 42 U.S.C.

Affidavit of Special Agent Jennifer Jackson- 3
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

§ 7521(a)(3)(A)(i).  Accordingly, the EPA has established emission standards for vehicles.  40 C.F.R.  §§ 86.004-11, 86.007-11, 86.096-11, 86.098-11, 86.009-11 (HDDE); 40 C.F.R.  §§ 86.1811-04, 86.1811-09, 86.1811-10, 86.1811-17 (light-duty/medium-duty vehicles).

14.     To meet these emission standards, engine manufacturers employ many devices and "elements of design." "Elements of design" are "any control system (i.e., computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interaction, and/or hardware items on a motor vehicle or motor vehicle engine." 40 C.F.R.  § 86.094-2.  Manufacturers also employ certain hardware devices as emission control systems to manage and treat engine exhaust to reduce the levels of pollutants that are being emitted into the air.  Such devices include the diesel oxidation catalyst (DOC), selective catalytic reduction (SCR), diesel particulate filters (DPF), and exhaust gas recirculation (EGR).

15.     Under 42 U.S.C.  § 7521(m)(1), the EPA is authorized to create regulations requiring manufacturers to install on-board diagnostic (OBD) systems on vehicles and engines to ensure the vehicles' emission control systems are functioning properly.  The EPA has thus enacted regulations that require manufacturers to install OBD systems on vehicles and engines.  OBD systems must be "capable of monitoring all emission-related engine systems or components," including the DOC, SCR, DPF, and EGR.  See 40 C.F.R.  §§ 86.010-18 and 86.1806-05.

16.     The CAA provides criminal penalties for tampering with monitoring devices or methods.  Pursuant to 42 U.S.C.  § 7413(c)(2)(C), any person who knowingly falsifies, tampers with, renders inaccurate, or fails to install any monitoring device or method required to be maintained or followed under the CAA shall, upon conviction, be subject to a fine and up to two years of imprisonment.

17.     OBD systems are monitoring devices or methods required to be maintained or followed under the CAA to ensure that the emission control systems are functioning properly.  See 40 C.F.R.  §§ 86.010-18(a) (requiring OBD system for certain heavy-duty vehicles "capable of monitoring all emission-related engine systems or components during

Affidavit of Special Agent Jennifer Jackson- 4
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
·(206) 553-7970

1  the life of the engine") and § 86.1806-5(a)(1) (requiring OBD system for certain light-duty
2  vehicles, light-duty trucks, and heavy-duty vehicles "capable of monitoring all emission-
3  related powertrain systems or components during the applicable useful life of the vehicle").
4  Accordingly, tampering with or rending inaccurate an OBD system is a criminal violation of
5  the CAA.

6  **B.    Diesel Emission/Exhaust System Components**

7        18.    Generally, diesel-powered trucks have the emission system components mentioned
8  above. Several of the components, described below, involve hardware affixed to the trucks'
9  undercarriage.  These components work in concert and are intended to reduce the pollutant
10  emissions produced by diesel-powered engines.  Since model year 2008, all diesel trucks have been
11  required to be equipped with an OBD, which monitors all emission-related engine systems and
12  components, including the DOC, SCR, DPF, and EGR.  If there is a malfunction or deterioration of
13  the emission system, the OBD will cause a Malfunction Indicator/Check Engine Light to be
14  illuminated in the truck's cabin.  The diagram below shows the general layout of some of these
15  components:



23        19.    In certain circumstances, if a hardware emission system problem is not
24  resolved, the OBD can shut down the truck or limit the top speed of the truck, an effect
25  commonly referred to as "limp mode" or "power reduced mode."  In some instances,
26  operating in limp mode will limit a truck's horsepower (potentially resulting in a lower
27  maximum speed).  This is intended to provide an incentive 1  for the truck's operator to
28  repair the truck.  Effectively, the hardware components (DOC, SCR, DPF, and EGR) and

Affidavit of Special Agent Jennifer Jackson- 5
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  computer component (OBD) work together to reduce emissions and monitor diesel truck
2  emission hardware components.

3       20.     A DOC is one component of the hardware emission system.  The DOC
4  converts hydrocarbons (fuel) and carbon monoxide (exhaust) into water and carbon dioxide
5  though an oxidation reaction.  The DOC is akin to a gasoline engine's catalytic converter.
6  The function of both a DOC and a catalytic converter is to reduce pollutants released into the
7  atmosphere.

8       21.     A second component is the SCR system.  The SCR is a type of catalytic
9  converter that uses diesel exhaust fluid (DEF), a urea-based fluid sprayed into the exhaust
10  stream.  Then, when the DEF and nitrogen oxide (NOx) containing gases reach the SCR
11  catalyst, they react to form nitrogen and water.

12       22.     A DPF is a third component.  Once the exhaust stream has been treated by the
13  DOC and SCR, it travels through the DPF where particulate matter is trapped in a filter,
14  further reducing the pollutants released into the atmosphere.

15       23.     A fourth component is the EGR system.  This system reduces nitrogen oxide
16  (NOx) emissions by recirculating a portion of the engine's exhaust gas back to the engine
17  cylinders.  This process dilutes the oxygen in the incoming air stream and provides gases
18  inert to combustion to act as absorbents of combustion heat to reduce peak in-cylinder
19  temperatures.  This reduces combustion temperatures and thereby reduces formation of NOx.

20  **C. Defeat Devices and Methods**

21       24.     The need for emissions control involves engineering tradeoffs: a dirty vehicle
22  with no emissions control can be more powerful or fuel efficient than its clean counterpart.
23  For that reason, some operators attempt to defeat the emissions control technology.

24       25.     There are various methods to defeat a vehicle's emission system.  One method
25  is to completely remove the portion of the exhaust system that contains the emission control
26  devices and replace it with a section of exhaust tubing, or "straight pipe."  This method
27  allows pollutant gases and particulate matter to be freely emitted to the atmosphere.

28

Affidavit of Special Agent Jennifer Jackson- 6
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

26.     Another method used to defeat a vehicle's emission systems is to remove components such as the DOC and DPF or hollow them out by removing internal contents and then reconnecting them to the exhaust pipe. This gives the appearance those components are intact but eliminates their function.

27.     Another method used to defeat a vehicle's emission system is to disconnect or remove the SCR. The SCR consumes diesel exhaust fluid at a rate of 1% to 2% of fuel consumption. As diesel exhaust fluid is priced similarly to diesel fuel, disabling the SCR avoids the expense of refilling diesel exhaust fluid.

28.     Yet another method used to defeat the emission system is to disable the EGR. The EGR can be turned off electronically or can be physically removed. Disabling the EGR can increase engine power but at the expense of greater formation of NOx emissions.

29.     If any of the emissions hardware components (DOC, SCR, DPF, and EGR) are removed or disabled as described above, a properly functioning OBD will detect a malfunction. Thus, a defeat device must be used to manipulate the OBD to prevent the truck from going into "limp mode" and to prevent the Malfunction Indicator Light from turning on. The practice of using a defeat device to manipulate an OBD system in this manner is commonly referred to as "tuning" the vehicle.

30.     When a vehicle is "tuned" in this way, it may be able to run with increased horsepower and torque, and a vehicle's fuel mileage may also increase. However, tuning vehicles in this manner results in significantly increased pollutant emissions. The process of tuning uses a software program often referred to as a "tune," where the tune is used to affect engine operations, often including emissions controls and monitoring devices. The term "tune" can also refer to legitimate software or uses of software to interact with the electronics of a vehicle, in a manner that does not impair emission controls or the OBD. This Affidavit focuses on those circumstances where tuning manipulates a vehicle's OBD system in such a way as to prevent the OBD from detecting the removal or disabling of the emission hardware components.

Affidavit of Special Agent Jennifer Jackson- 7
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

31.     The EPA is aware of multiple types of defeat devices used for tuning.  One example is a plug-in tuner, which is a defeat device that can be plugged into the vehicle's data link connector to the OBD and permit "on-the-fly" tuning.  Plug-in tuners allow the driver to turn on and off at will the software modifications that manipulate the engine computer module and prevent the OBD from detecting a malfunction in the emission controls.

32.     Another example is a defeat device that involves "flashing" (reprogramming) the engine computer module.  This defeat device prevents the OBD from detecting a malfunction in the emission controls.  In preventing the OBD from detecting these malfunctions, these defeat devices are tampering with or rendering inaccurate a monitoring device or method required under the CAA.

33.     These emissions hardware components (DOC, SCR, DPF, and EGR) are commonly sold in the performance auto industry and community as "delete kits" or "delete devices."  Sometimes, these components are combined with tunes to allow a user to disable emissions controls and prevent the OBD from detecting that they were disabled.

### STATEMENT OF PROBABLE CAUSE

34.     ***Information Provided by Complainant:*** On December 4, 2018, I interviewed Chelsea Pierce, who contacted the government to provide information about alleged illegal activity at RPM Northwest, a diesel repair and maintenance shop in Ridgefield, Washington.  Pierce explained she has worked in the auto industry since she was 17 years old and spent almost 23 years working in sales and inventory procurement for an auto parts distribution company called Team Allied located in Portland, OR.  Pierce said she was familiar with RPM Northwest because they were a customer of Team Allied and frequently purchased tail pipes and 4-5" diameter tubing.  Pierce said she began working for RPM Northwest on July 17, 2018.  Pierce explained her duties included service writing and ordering parts, and she was trained by the owners of RPM Northwest, Sean and Tracy Coiteux.

35.     Pierce said she reviewed RPM Northwest's purchasing records and saw frequent purchases of straight pipes, exhaust gas recirculation (EGR) deletes, and block off

Affidavit of Special Agent Jennifer Jackson- 8
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  plates, all of which are commonly used to defeat the required emission systems on a vehicle,
2  as explained above.  Pierce said she has witnessed RPM Northwest mechanics remove
3  emission control components from vehicles and replace them with defeat device systems
4  including straight pipes or hollowed-out parts and reinstall components to cause them to
5  appear as if they are still functioning.

6  36.  Pierce said RPM Northwest uses OBD device programmers, or tuners, to
7  prevent vehicles from detecting emission system malfunctions and run with normal or
8  enhanced performance.  Pierce said RPM Northwest purchases tuners online predominately
9  from PPEI, a company located in Lake Charles, Louisiana.  Pierce said RPM Northwest
10  commonly purchases from PPEI a "Universal DST Switch," which is a 5-tuner program that
11  works on several diesel truck models.  Pierce said PPEI sends emails to RPM Northwest
12  containing links to the tuner software.  Pierce said she has seen RPM Northwest's service
13  writer, Nick Akerill, use his cell phone to download the link to the tuner and reprogram or
14  "flash" the engine computer module using a cable connected to the vehicle's data link
15  connector to his cell phone.

16  37.  ***Undercover Contacts with RPM:***  On April 17, 2019, EPA-CID special agents
17  including myself, Michael Sparks, Mark Goodwin, and Eric Martenson executed an
18  undercover operation at RPM Northwest.  The undercover agent drove a 2017 Chevy 3500
19  diesel truck and asked RPM Northwest to install emissions system defeat devices—a straight
20  pipe and tune—to his vehicle.  Akerill explained the work could be done but it would be
21  expensive due to the truck's specific engine.  The undercover agent offered that he owned a
22  small construction business and expressed interest in similar services for those trucks.

23  38.  On April 18, 2019, I and the same EPA-CID agents conducted a consensually
24  monitored and recorded phone call with Sean Coiteux, owner of RPM Northwest.  During
25  the phone call, Coiteux sought more information, including vehicle identification numbers,
26  regarding the trucks.  He explained that this was to help him and Akerill determine
27  scheduling and prices.  The undercover agent asked Coiteux if he knew what services the
28  agent was seeking for the trucks, to which Coiteux replied "yes."  Coiteux provided the

Affidavit of Special Agent Jennifer Jackson- 9
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  undercover agent his email, Sean@rpmnorthwest.com, and asked the agent to send the

2  information he requested.

3      39.    Approximately one hour after the conversation with Coiteux, the undercover

4  agent received a phone call from a number with a 360 area code (which includes the

5  Ridgefield area).  The undercover agent called the number back, and the phone was

6  answered by a person identifying himself as "Steve."  "Steve" did not explain what had

7  prompted his call to the undercover, but asked about the nature of the undercover agent's

8  business.  The undercover agent had not recently provided his undercover phone number to

9  any person other than RPM representatives.  Based on the nature of the call and the 360 area

10 code, the investigative team concluded that "Steve" was likely associated with RPM; that

11 Coiteux had likely grown suspicious of the undercover agent; and that "Steve" was

12 attempting to gather information about the undercover agent.

13     40.    On April 18, 2019, EPA-CID agents sent Coiteux an email using the

14 undercover agent's email account.  In the email, the undercover agent provided Coiteux a list

15 of truck models and inquired about scheduling the work for the trucks.  Coiteux did not

16 respond to the email.  Given the lack of any response, and RPM's apparent suspicion of the

17 undercover (as evidenced by the call from "Steve"), we decided not to pursue additional

18 undercover phone calls or emails with RPM Northwest in order to protect the undercover

19 agent's identity and to avoid raising further suspicion

20     41.    *The 2703 Order and Resulting Evidence:*  On August 2, 2019, this Court

21 authorized an order pursuant to 18 U.S.C.  § 2703(d) requiring Google to disclose certain

22 non-content information pertaining to the email account Sean@rpmnorthwest.com.  I served

23 the order on Google the following day.

24     42.    Google produced material responsive to the 2703(d) order on September 17,

25 2019. I, along with other EPA personnel, have reviewed the information provided by Google

26 and discovered the communications discussed below.  In all of the following email

27 exchanges, rpmpnw@gmail.com was the sender of the emails in the exchange, and

28

Affidavit of Special Agent Jennifer Jackson- 10
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | Sean@rpmnorthwest.com was included by way of the 'carbon copy' feature, or "cc'd"

2 | (including in the receipt of communications from the entities listed above).

3 |      43.     Email communications were exchanged on June 12, 14, and 15, 2018 between

4 | Sean@rpmnprthwest.com, rpmpnw@gmailcom, and thomas@PPEI.com.  Based on my

5 | familiarity with other investigations and communications with other EPA enforcement

6 | personnel, I know that PPEI is a manufacturer of tune/tuner products that allow the removal

7 | of emission controls on diesel trucks.  I also know, based on my communications with

8 | another EPA-CID agent, that PPEI is currently under investigation for violations under CAA

9 | similar to those giving rise to this investigation.

10 |      44.     On June 8, 2018, email communications were exchanged between

11 | Sean@rpmnprthwest.com, rpmpnw@gmailcom, and ashley@sinisterdiesel.com.  I know,

12 | based on my communications with another EPA-CID agent, that Sinister Diesel is a

13 | manufacturer and distributor of diesel parts, including EGR delete kits, straight pipes, and

14 | tuners and is currently under investigation for violations under the CAA similar to those

15 | giving rise to this investigation.  I also know that, on August 27, 2019, EPA-CID executed a

16 | federal search warrant at Sinister Diesel's place of business in Roseville, CA.

17 |      45.     Email communications were exchanged with

18 | richard.mizell@derivesystems.com (12/28/2015),

19 | sales@gearheadautomotiveperformance.com (08/06/2014; 12/08/2014; 12/09/2014),

20 | sales@spartandieseltech.com (06/04/2014), and will@rudysdiesel.com (08/01/2014;

21 | 08/04/2014; 08/05/2014), eric@rudysdiesel.com (09/22/2014), and josh@rudysdiesel.com

22 | (07/05/2018).  I know, based on my communications with EPA Air Enforcement Division

23 | personnel, that EPA has identified manufacturers who produce and sell "in-scoped" tunes

24 | and tuners, which are products that allow for the removal of emission controls on diesel

25 | engines (aka "delete" tuning or "emissions equipment-removed" tuning) to include, but not

26 | limited to, Derive Systems, Gear Head Automotive Performance, Rudy's Diesel, and Spartan

27 | Diesel Tech.  I also know, based on communication with those enforcement personnel, that

28 | based on their sales data from an information request sent to multiple vendors, RPM

Affidavit of Special Agent Jennifer Jackson- 11
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Northwest purchased two tuners with Punch It delete tunes from Rudy's Diesel in 2016.

2  According to those enforcement personnel, Rudy's is a large distributor of aftermarket parts,

3  and Punch It sold many of their delete tunes through Rudy's.

4       46.    Email communications were also exchanged with Thunder Diesel, Inc., a

5  distributor for aftermarket diesel parts.  These email communications were with

6  cole@thunderdiesel.com (01/23/2015; 06/12/2018); caleb.g@thunderdiesel.com

7  (06/29/2018); and info@thunderdiesel.com (06/12/2014; 05/15/2018; 06/21/2018).  Chelsea

8  Pierce stated during her interview that, when she worked at RPM Northwest, she saw

9  purchase records for EGR delete kits, block off plates, and piping from Thunder Diesel.

10       47.    Several email communications were also exchanged between RPM Northwest

11  and Team Allied Co., which is where Chelsea Pierce said she worked prior to working for

12  RPM Northwest.  Specifically, email communications were exchanged with

13  chelsea.Pierce@team-allied.com (11/21/16; 06/13/2018; 04/14/2018; 06/25/2018), ar@team-

14  allied.com (05/07/2018; 05/08/2018; 06/04/2018; 06/05/2018; 06/12/2018; 06/13/2018;

15  06/25/2018; 06/28/2018), and Dave.Rosenboom@team-allied.com (06/13/2018).  Chelsea

16  Pierce stated in her interview that RPM Northwest frequently purchased 4-5" diameter tube

17  sections used for exhaust tubing or "straight pipes."

18       48.    Email exchanges were also made with HP Tuners Inc., specifically

19  sales@hptuners.com (03/21/2016), support@hptuners.com (03/24/2016), and

20  updates@hptuners.com (05/09/2018).  I know, based on my own investigative research, that

21  HP Tuners manufactures a downloadable software program called VCM Editor, which is

22  used to support tuning services.

23       49.    The information provided by Google also indicated numerous email exchanges

24  with Premier Performance Inc., specifically with ar@premierperformanceinc.com (266 hits).

25  Premier Performance is a wholesale distributor for aftermarket auto parts.  I know, based on

26  discussions with EPA's Air Enforcement Division personnel, who have obtained purchase

27  data from several vendors across the country using their own investigative techniques, that

28

Affidavit of Special Agent Jennifer Jackson- 12
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  RPM Northwest purchased 17 EGR delete kits made by Sinister, Deviant Race Parts, and
2  RCD Performance in 2017 and 2018 from Premier Performance.

3       50.    EPA enforcement personnel have informed me that they have collected sales
4  data from other vendors in the industry indicating that RPM Northwest purchased two tuners
5  (part number 40420) in 2017 from a company called Bully Dog located in Sanford, Florida.
6  In October and November 2015, a compliance inspection team consisting of staff from EPA
7  and federal contractor, Eastern Research Group Inc., conducted emission tests using
8  electronic control module tuners to include Bully Dog's diesel GT tuner (part number
9  40420).  The test result confirmed that the Bully Dog 40420 tuner, when installed on a 2012
10  Ford F250 with a 6.7-liter Power Stroke diesel engine, causes NOx emissions to nearly triple
11  and exceed the applicable emissions standard for this engine.

12       51.    Based on the foregoing, I have probable cause to believe that evidence
13  regarding the purchase of defeat device kits and tuners used to modify a vehicle's engine
14  computer module to avoid detection of a malfunction in emission hardware components in
15  violation of the Clean Air Act will be found in the contents of messages in the email
16  accounts Sean@rpmnorthwest.com and rpmpnw@gmail.com.

17  **BACKGROUND CONCERNING EMAIL**

18       52.    In my training and experience, I have learned that Google provides a variety of
19  on-line services, including electronic mail access, to the public.  Google allows subscribers
20  to obtain email account at the domain name gmail.com, but also assigns other domain names.
21  The website, https://tools.dnsstuff.com, reports the domain, rpmnorthwest.com is hosted by
22  Google LLC.  On July 26, 2019, I consulted with Special Agent James Golden with EPA-
23  CID National Computer Forensics Laboratory (NCFL).  SA Golden used the website
24  mxtoolbox.com to search the domain, rpmnorthwest.com, and verified that it is hosted by
25  Google.

26       53.    Subscribers obtain an account by registering with Google.  During the
27  registration process, Google asks subscribers to provide basic personal information.
28  Therefore, the Google servers are likely to contain stored electronic communications

Affidavit of Special Agent Jennifer Jackson- 13
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

(including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities, and can provide evidence of the subscriber's intent to conceal his or her identity.

54.    A Google email subscriber can also send and store files in addition to emails, such as address books, contact lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google.  In my training and experience, evidence of who was using an email account may be found in address books, contact lists, emails in the account, and attachments to emails, including pictures and files.

55.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

56.    Information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for

Affidavit of Special Agent Jennifer Jackson- 14
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  "indicia of occupancy" while executing a search warrant at a residence.  For example, email

2  communications, contact lists, and images sent (and the data associated with the foregoing,

3  such as date and time) may indicate who used or controlled the account at a relevant time.

4       57.     Information maintained by the email provider can show how and when the

5  account was accessed or used.  For example, email providers typically log the Internet

6  Protocol (IP) addresses from which users access the email account, along with the time and

7  date of that access.  By determining the physical location associated with the logged IP

8  addresses, investigators can understand the chronological and geographic context of the

9  email account access and use relating to the crime under investigation.  This geographic and

10 timeline information may tend to either inculpate or exculpate the account owner.

11 Additionally, information stored at the user's account may further indicate the geographic

12 location of the account user at a particular time (e.g., location information integrated into an

13 image or video sent via email).

14                     **REQUEST FOR SEALING**

15      58.     I further request that the Court order that all papers in support of this

16 application, including the affidavit and search warrant, be sealed until further order of the

17 Court.  These documents discuss an ongoing criminal investigation that is neither public nor

18 known to all of the targets of the investigation.  Accordingly, there is good cause to seal

19 these documents because their premature disclosure may seriously jeopardize that

20 investigation.

21                          **CONCLUSION**

22      59.     Based on the forgoing, I request that the Court issue the proposed search

23 warrant.  Because the warrant will be served on Google, who will then compile the requested

24 records at a time convenient to it, reasonable cause exists to permit the execution of the

25 requested warrant at any time in the day or night.

26 //

27 //

28 //

Affidavit of Special Agent Jennifer Jackson- 15
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4          JENNIFER JACKSON
           SPECIAL AGENT
5          U.S. Environmental Protection
           Agency
6          Criminal Investigation Division
7
8    SUBSCRIBED AND SWORN before me on February 5th, 2020.
9
10
11
     DAVID W. CHRISTEL
12   United States Magistrate Judge
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Affidavit of Special Agent Jennifer Jackson- 16
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Google accounts with the assigned email addresses Sean@rpmnorthwest.com and rpmpnw@gmail.com.  The information is stored at premises owned, maintained, controlled, or operated by Google LLC, a web-based electronic mail service provider that is headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on April 18, 2019 and renewed on July 15, 2019, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the accounts, including stored or preserved  copies of emails sent to and from the accounts, draft emails, the source and destination addresses  associated with each email, the date and time at which each email was sent, and the size and length of each email.

b.    All subscriber records or other information regarding the identification of the account user, to include: 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Google in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all linked or related accounts;

c.    Information reflecting the types of Google services utilized by the account user;

d.    All records or other information stored by any individual using the account, including address books, contact and buddy lists, Google Calendar content, Google Drive content; Google Photos content; and Google Web & Activity content; and

e.    All account history, including any records of communications between Google and any other person about issues relating to the accounts, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber in connection with the service.

The Provider is hereby ordered to disclose the above information to the

ATTACHMENT B- 1
USAO# 2019R00741

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5200
Seattle, Washington 98101
(206) 553-7970

1  government within 14 days of service of this warrant.

2  **II.     Information to be seized by the government**

3      Upon receipt of the information described in Section I, the government shall review the

4  production and may seize the following material:

5      All information described above in Section I pertaining to the following matters:

6      a.     Evidence regarding or relating to defeat devices, including but not limited to the

7  emissions hardware components (DOC, DPF, SCR, or EGR), tunes, and tuners;

8      b.     Evidence as to the creation, sale, purchase, distribution, delivery, transportation,

9  ordering, instructions of use, depiction, advertising, use, and/or support of defeat devices;

10     c.     Content referring or relating to any of the following business entities:

11
12                  i.   Team Allied

13                  ii.  Sinister Diesel

14                  iii. Premier Performance Inc.

15                  iv.  Bully Dog

16                  v.   HP Tuners

17
18                  vi.  Thunder Diesel

19                  vii. Derive Systems

20                  viii. Gear Head Automotive Performance

21                  ix.  Rudy's Diesel

22                  x.   Spartan Diesel Tech

23
24     d.     Evidence relating to the relationships among other companies engaged in the

    defeat device industry and the principals and employees of those entities.  This includes but is
25  not limited to evidence reflecting each entities role(s) in the chain of distribution, bundling

26  arrangements, financial arrangements among the entities, business contracts or business
    practices among the entities, and conversations among or regarding the entities concerning

27  defeat devices.

28

ATTACHMENT B- 2
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    e.    Evidence relating to dealers, customers, users, and related identifying
2 information;

3    f.    Information related to vehicles, vehicle diagnostics, and other related identifying
4 information;

5    g.    Evidence relating to knowledge, including as to the illegality of defeat devices
6 and strategies for evading detection by law enforcement and strategies or arguments for
avoiding criminal liability;

7    h.    Types, amounts, and prices of defeat devices possessed, sold, or offered for sale,
8 as well as dates, places, and amounts of specific transactions; Banking, accounting, profit and
loss statements, payroll or other records reflecting the revenue or profits associated with sales
9 of defeat devices.  This includes but is not limited to evidence of how defeat devices fit into
10 the financial picture of RPM Northwest, how employees were compensated for installation of
defeat devices, how payments were made by customers of defeat devices in their vehicles, and
11 where those payments were ultimately deposited;

12    i.    Any information related to the creator(s) or source(s) or defeat device
13 components RPM Northwest purchased or connected its customers with to purchase
14 (including names, addresses, phone numbers, or other identifying information);

15    j.    Evidence relating to the use of the accounts or defeat devices to communicate
16 with, or communicate vehicle information to any entity, including but not limited to:

17    a.    Records of Internet Protocol addresses or servers used or connected to;

18    b.    Records of internet activity, including firewall logs, caches, browser history and
19 cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any
Internet search engine, and records of user-typed web addresses;

20    k.    Evidence indicating communications between sellers, distributors, purchasers,
21 programmers, or creators of defeat devices;

22    l.    Evidence indicating steps taken to further the sales, proliferation or usage of the
23 defeat devices;

24    m.    Evidence indicating how and when the email account was accessed or used, to
25 determine the geographic and chronological context of account access, use, and events relating
to the crime under investigation and to the email account owner;
26

27    n.    Evidence indicating the email account owners' states of mind as it relates to the
crimes under investigation; Evidence of user attribution showing who used, accessed, or
28 owned the accounts at the time the evidence described herein was used, created, edited, or

1   deleted, such as logs, phonebooks, saved usernames and passwords, documents, browsing
2   history, and IP addresses or servers used or connected to;

3         o.      Evidence of other means of communication (including in person meetings, text
4   messages, phone calls) the persons who created or used the accounts to communicate
    regarding defeat devices.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B- 4
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google the attached records consist of _____ (pages/CDs/megabytes). I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google and they were made by Google as a regular practice; and

b.     such records were generated by Google electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                      Signature

CERTIFICATE OF AUTHENTICITY
USAO# 2019R00741

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970